**AVON PRODUCTS, INC., Employer, Appellant,**

v.

**Frances LAMPARSKI, Claimant, Appellee.**

Supreme Court of Delaware.

May 16, 1972.

William J. Alsentzer, Jr., of Bayard, Brill & Handelman, Wilmington, for Avon Products, Inc., Employer.

Oliver V. Suddard, Wilmington, for Frances Lamparski, Claimant.

CAREY and HERRMANN, JJ., and DUFFY, Chancellor, sitting.

DUFFY, Chancellor:

This appeal brings up for review an order of the Superior Court which affirmed a decision of the Industrial Accident Board dismissing a petition to terminate benefits.

The determinative issue is whether there was sufficient evidence to support the decision of the Board.

## I

On April 8, 1966 the employee, Frances Lamparski, sustained a compensable upper-back strain in the course of her employment by Avon Products, Inc. Pursuant to 19 Del.C. § 2324, employer and employee entered into agreements which were approved by the Board; these compensated the employee for total disability caused by an acute dorsal strain resulting from the injury. In 1968 Avon petitioned the Board under 19 Del.C. § 2347 for termination of benefits on the ground that Mrs. Lamparski's incapacity to work had ended; after hearing, the Board dismissed the petition. There was no appeal.

On November 24, 1970 Avon filed a second petition to terminate compensation. After hearing, the Board again dismissed the petition and that decision was affirmed by the Superior Court without opinion. This appeal followed.

## II

■ The scope of review of factual findings of the Industrial Accident Board, both in the Superior Court and in this Court, is limited to a determination of whether or not there was substantial evidence sufficient to support those findings. M. A. Hartnett, Inc. v. Coleman, Del.Supr., 226 A.2d 910 (1967), and General Motors Corp. v. Freeman, Del.Supr., 3 Storey 74, 164 A.2d 686 (1960).

■ A party seeking to modify an award by subsequent review bears the burden of establishing by a preponderance of the evidence that the award should be modified. Cf. Braun and Company v. Mason, Del.Supr., 3 Storey 279, 168 A.2d 105 (1960). In the absence thereof the disability which led to the award will be deemed to continue. Compare Ham v. Chrysler Corp., Del.Supr., 231 A.2d 258 (1967), and Bigelow v. Sears, Roebuck & Co., Del. Supr., 260 A.2d 906 (1969). If, however, the party seeking modification proves by a preponderance of the evidence that there is not a causal relationship between a present disability and a prior accident, he is entitled to a modification order. And a petition to terminate supported by new evidence is not barred by a prior dismissal.

We turn now to the record.

## III

Although the grounds stated in the second petition are the same as in the first (termination of incapacity to work), Avon concedes that Mrs. Lamparski may be totally disabled within the meaning of the Workmen's Compensation Act. But, says Avon, any present disability is unrelated to the injury which she sustained in the course of her employment. That argument is at the heart of the controversy.

Avon offered the testimony of three doctors. The first of these was Dr. Theodore Strange, an orthopedist, who testified that he had treated Mrs. Lamparski from September 1968 to 1970, after seeing her at the request of her counsel. He said that her condition did not change over that time. At his request, she was examined by the two other specialists: Dr. Thomas Vates, a neurologist, and Dr. George Voegele, a psychiatrist. Dr. Strange stated that, in his opinion, Mrs. Lamparski has a discogenic disease of the low back caused by aging and a sacrocele [1] which is congenital and not associated with the accident; in short, he said that there is no connection between her current low-back complaints and the 1966 injury.

Dr. Vates testified that he performed a myelogram on April 24, 1970 which revealed the sacrocele. He said that it is probably the cause of Mrs. Lamparski's discomfort in the low back and legs; he testified that, possibly, the sacrocele was

---

1. A sacrocele is a cyst in the lining surrounding the spinal cord in the low back.

caused by injury but the "overwhelming probability" is that it results from a congenital abnormality. He said that there are nerve roots which go through the cyst formed by the sacrocele and that it is common for persons with this condition to experience pain in the low back and legs.

Dr. Voegele testified that he had seen Mrs. Lamparski twice in 1970 and once in 1971. In his opinion, she is suffering from a conversion neurosis which was not caused by the 1966 ("tray-pulling") accident that she sustained while employed by Avon.

The only medical testimony offered by Mrs. Lamparski was that of Dr. Sanford Rogg, a psychiatrist. He, too, said that she is suffering from a conversion neurosis but, in his opinion, it was precipitated by the injury she suffered in the course of her employment.

The Board also had before it the deposition of Dr. Joseph Barsky, Mrs. Lamparski's personal physician from 1962 to 1967. She did not complain to him of any back pain until April 1967, almost a year after the injury of 1966.

The testimony of Doctors Strange and Vates establishes beyond doubt that the muscular-skeletal injury associated with the 1966 accident has ended. Mrs. Lamparski's present complaints concern pain in the low back (the accident caused pain in the upper back) which results from aging and the sacrocele (neither of which was caused by the accident). Avon thus met his burden of establishing by a preponderance of the evidence that Mrs. Lamparski does not have a present back disability which is accident-connected. Braun and Company v. Mason, supra.

We turn now to the conversion neurosis; causation thereof is the critical factual (medical) issue in the case.

In Sears, Roebuck and Company v. Farley, Del.Supr., 290 A.2d 639 (1972), Chief Justice Wolcott recently wrote:

"It is, of course, true that an award for a post-traumatic hysteria may be made when the hysteria occurs when a worker sustains a primary disabling physical injury and thereafter develops a secondary mental condition which causes him to believe that he still suffers from the disabling effects of the physical injury, even though he has in fact fully recovered physically. Fiorucci v. C. F. Braun & Co., 4 Storey 79, 173 A.2d 635 (Super.Ct.1961)."

Here, Dr. Rogg's diagnosis was that Mrs. Lamparski has an "hysterical neurosis with a conversion type" which he said was accident-connected.[2]

Dr. Voegele testified that Mrs. Lamparski has an "hysterical neurosis or conversion reaction," both of which mean the same thing. He said that the 1966 accident did not cause Mrs. Lamparski's psychogenic problem but, when asked what did cause it, he said this:

"First, her personality, which she had before, which made her prone to react with a psychoneurosis to stress; second, the treatments she was exposed to, the remarks by people and doctors which fixed in her mind two things—and maybe lawyers, too—that she is an invalid

2. Dr. Rogg provided the following definition:
"First I will define the neurosis as being different from a psychosis. In a neurosis the individual is in full possession of their faculties. They know right from wrong, they are responsible for what they do and what they say completely. An hysterical neurosis is where the individual's personality is fragment- ed, in the sense that it comes—the person becomes unstuck or unglued, and they undergo what they commonly refer to and technically call an hysterical neurosis. By the conversion type, the ungluing of the personality focuses or converts to somatic symptomatology, which in this case I felt was her back condition."

and she has a right to get compensation for it. And this, I think, is the basis which then unconsciously put these reactions to work, which produced the psychoneurosis. She escaped into this and found freedom from responsibility, freedom from work, the pleasure of being pampered, the pleasure of being taken care of, and so forth, and the conviction that she has a right to get money and does not have to work. This I think— this is the definition of a compensation neurosis I just gave you."

The testimony is mixed. Thus while Dr. Rogg testified that if the sacrocele started exhibiting its presence by pain after the accident, that would be a change in Mrs. Lamparski's life pattern and, in such event, "I would be wrong"—presumably in his conclusion as to causation of the neurosis. But we cannot say as a matter of law that this brief comment necessarily modifies his specific and detailed testimony as to causation. And while Dr. Voegele said flatly that the neurosis is not accident-connected, his testimony does not compel this conclusion in the legal sense. On the contrary, it shows that the neurosis developed with and from, among other things, the treatments Mrs. Lamparski was exposed to for the primary physical injury which was conceded to be accident-connected. This is a secondary mental condition within the rule stated in Sears, Roebuck and Company v. Farley, supra. And, as to that condition, we emphasize that both psychiatrists testified that the neurosis is real, Mrs. Lamparski is not malingering and she needs psychiatric assistance for the neurosis. Dr. Voegele thought she should be hospitalized. Dr. Rogg indicated she could be treated on an out-patient basis.

On this record, we conclude that the Board quite properly found that Avon failed to sustain its burden of establishing by a preponderance of the evidence that the award should be modified. And it specifically required as a condition of further

payments that the claimant make herself available for psychiatric care and treatment if requested to do so by Avon.

The judgment below will be affirmed.