# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANTHONY MORABITO, | : | |
| | : | Case No. K17A-06-001 WLW |
| Appellant, | : | Kent County |
| | : | |
| v. | : | |
| | : | |
| PROFESSIONAL STANDARDS | : | |
| BOARD, | : | |
| | : | |
| Appellee. | : | |

Submitted: October 9, 2017
Decided: January 23, 2018

## OPINION AND ORDER

Appellant's Motion to Dismiss - *Denied.*
Appeal from the Decision of the
Professional Standards Board - *Affirmed.*

Anthony Morabito, *pro se.*

Patricia A. Davis, Esquire of the Department of Justice, Dover, Delaware; attorney for the Professional Standards Board.

WITHAM, R.J.

Before the Court is the Appellant, Anthony Morabito's, appeal from the Delaware Professional Standards Board's (hereinafter, the "Standards Board") decision to suspend his teaching license and certificates for two years based upon a hearing officer's determination that Mr. Morabito was dismissed from the Milford School District for immorality and falsification of records. After an extensive review of the record, it is clear to the Court that the hearing officer had substantial evidence to support his recommendation to the Standards Board. And, there is no indication that either the hearing officer or the Standards Board committed legal error. Accordingly, the Standard Board's decision to suspend Mr. Morabito's teaching license and certificates for two years is affirmed.

This order also resolves Mr. Morabito's "Motion to Dismiss," filed on September 18, 2017. As the motion is clearly without merit, it is hereby denied.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On September 16, 2009, Mr. Morabito was terminated from the Smyrna School District for Neglect of Duty.

On July 15, 2010, the Superior Court of Delaware affirmed a hearing officer's recommendation to terminate Mr. Morabito's employment as a teacher for the Smyrna School District.[2] The Superior Court found that the hearing officer had substantial evidence to support his finding that Mr. Morabito was terminated for Neglect of

---

[1] Since this matter involves an appeal of an administrative agency's decision, the Court confines its review to the facts contained in the record, and it is those facts that are referenced herein.

[2] *Morabito v. Bd. of Educ. of Smyrna Sch. Dist.*, C.A. No. 09A-09-005 (Del. Super. July 15, 2010).

2

Duty.[3]

On May 16, 2011, the Supreme Court of Delaware issued an order that affirmed the Superior Court's July 15, 2010 decision.[4] The Supreme Court found that the Smyrna Board of Education (hereinafter, the "Smyrna Board") terminated Mr. Morabito's employment as a teacher for Neglect of Duty on September 16, 2009, and that substantial evidence in the record supported the Smyrna Board's conclusion that Mr. Morabito failed to do things that were required to be done in connection with his employment.[5]

On June 29, 2012, the Superior Court of Delaware issued a written decision that affirmed an Industrial Accident Board's (hereinafter, the "Accident Board") decision concerning Mr. Morabito.[6] The Superior Court rejected Mr. Morabito's contention that he was terminated for his industrial accident that occurred while he was employed by the Smyrna School District.[7] Instead, the Court found that there was substantial evidence to support the Accident Board's conclusion that Mr. Morabito was terminated or not renewed because of issues relating to his work as a

---

[3] *Id.*

[4] *Morabito v. Bd. of Educ. of Smyrna Sch. Dist.*, 2011 WL 1887548 (Del. May 16, 2011) (TABLE).

[5] *Id.*

[6] *Morabito v. Indus. Accident Bd.*, C.A. No. K11A-10-005 (Del. Super. Jun. 29, 2012).

[7] *Id.*

3

teacher.[8]

In the summer of 2015, Mr. Morabito applied for a teaching position with the Milford School District. In his application, Mr. Morabito indicated the following:

> Question 1: Have you ever been dismissed from an employment position?
>
> Answer: Yes, after a workplace injury in 2009, I was unable to perform my duties.
>
> . . .
>
> Question 18: Have you ever had a contract non-renewed, non extended, or been dismissed from employment?
>
> Answer: No.

Based on these misrepresentations, Mr. Morabito was hired by the Milford School District for the September 2015-June 2016 school year.

On October 7, 2015, upon discovering that Mr. Morabito had actually been terminated from the Smyrna School District for Neglect of Duty, the Milford Board of Education (hereinafter, the "Milford Board") notified Mr. Morabito that the board was recommending his termination. More specifically, the Milford Board sought to terminate Mr. Morabito for falsifying responsive information concerning his termination from the Smyrna School District in his employment application that he submitted to the Milford School District. Mr. Morabito's termination became effective on November 9, 2015, after Mr. Morabito failed to submit a timely request for a hearing before the Milford Board.

---

[8] *Id.*

4

On November 6, 2015, Dr. Kohel, Milford School District's Superintendent, notified the Secretary of the Delaware Department of Education that Mr. Morabito had been terminated from the Milford School District, effective November 9, 2015, for immorality. Dr. Kohel informed the Secretary that the specific reason that Mr. Morabito was terminated was for "falsification of employment records by omitting and/or falsifying his employment application responsive information concerning a prior employment termination."

On November 16, 2015, the Secretary of the Department of Education notified Mr. Morabito that the Secretary received notification from the Milford School District that Mr. Morabito had been terminated from his teaching position effective November 9, 2015 for immorality - falsification of employment records. In addition, the Secretary notified Mr. Morabito that the Secretary had initiated an investigation and would review the results of the investigation to determine whether to initiate disciplinary action against Mr. Morabito's teaching license.

On June 15, 2016, the Secretary sent Mr. Morabito a written "Notice of License Revocation." The Secretary stated that he intended to revoke Mr. Morabito's teaching license based upon an alleged violation of 14 *Del. C.* §§ 1218(a)(2) and (a)(6). Specifically, the Secretary alleged that Mr. Morabito falsified official school documents and was terminated from his position in the Milford School District for immorality and misconduct in his office. The Secretary also informed Mr. Morabito that, if he wished to challenge the Secretary's decision, he was entitled to a hearing with the Executive Director of the Standards Board within thirty days of the written notice. Mr. Morabito requested a hearing.

On July 26, 2016, the Standards Board's Executive Director, Chris Kenton, sent a letter to Mr. Morabito requesting his availability for a hearing before the Standards Board. Mr. Kenton enclosed a copy of the *Delaware Professional Standards Board Hearing Procedures and Rules*. Mr. Morabito did not respond to the letter or provide his availability.

On October 18, 2016, Mr. Kenton sent notice to Mr. Morabito that an evidentiary hearing would be scheduled for December 20, 2016 and December 21, 2016 at 8:30 a.m., and that he assigned Lewis L. Atkinson, III, Ed.D. (hereinafter, the "Hearing Officer") to act as the Standards Board's hearing officer. Mr. Kenton further stated that a copy of the *Delaware Professional Standards Board Hearing Procedures and Rules* had been provided to the parties with his July 26, 2016 letter; he also provided the website information to access the rules online. Additionally, Mr. Kenton: stated that subpoena requests and witness lists are time sensitive; provided the language of PSB Hearing Rule § 3.3.2.5 (subpoena requests) and PSB Hearing Rule § 3.3.2.6 (witness lists); specified the deadline for the parties to request subpoenas (November 29, 2016) and submit witness lists (December 13, 2016); and noted that PSB Hearing Rule § 3.0 addresses evidentiary hearings in more detail.

On December 19, 2016, Mr. Morabito sent a continuance request to the Standards Board. Mr. Morabito stated that he:

> Recently discovered the attorney [he] had contacted has a conflict and [his (Mr. Morabito's)] file is at a new attorney's office awaiting review for consideration. Of the four new attorneys [Mr. Morabito has] contacted all have said to request a continuance as they would not be

able to be present at a hearing so close to the holidays.[9]
The Hearing Officer issued a pre-hearing order on that same day granting Mr. Morabito's continuance request based upon the fact that Mr. Morabito had not previously requested a continuance and his representations surrounding his efforts to retain an attorney to represent him at the hearing.

On January 10, 2017, Mr. Kenton provided notice to the parties that the hearing would be held on February 22, 2017 at 8:30 a.m. In addition, Mr. Kenton provided the parties with new deadlines for requesting subpoenas and submitting witness lists. Finally, Mr. Kenton stipulated that all other procedures and information outlined in the October 16, 2016 scheduling letter remained in effect.

On January 30, 2017, Mr. Morabito sent the Standards Board his "Motion to Dismiss with Prejudice presented to the Delaware Professional Standards Board" and a letter addressed to the members of the board. Among other things, Mr. Morabito requested an additional continuance of the hearing because he had been unable to obtain counsel and wanted more time to depose witnesses. He also wanted to learn how to properly subpoena evidence and witnesses.

On February 14, 2017, the Hearing Officer issued a pre-hearing order denying Mr. Morabito's Motion to Dismiss. Additionally, the Hearing Officer denied Mr. Morabito's request for a continuance because: (1) it was his second such request in the matter; (2) Mr. Morabito had previously been granted a continuance based on his representations surrounding his efforts to obtain an attorney to represent him; (3) the

_____

[9] *See* Recommendation of Hearing Officer at 4.

7

February 22, 2017 hearing was scheduled more than two months after his first continuance request was granted; (4) Mr. Morabito was provided a copy of the Standard Board's hearing rules and procedures, which included the procedure for requesting subpoenas, as early as June 2016; and (5) the procedure for requesting subpoenas was included in the October 18, 2016 notice to the parties.[10]

On February 22, 2017, the Hearing Officer conducted a hearing to determine if Mr. Morabito was dismissed from the Milford School District for immorality and falsification of records. Mr. Morabito appeared *pro se*. Deputy Attorney General Valerie Dunkle represented the Delaware Department of Education (hereinafter, the "Education Department"). And, Deputy Attorney General Laura Makransky represented the Hearing Officer and the Standards Board.

During the course of the hearing, Ms. Dunkle introduced numerous documents relevant to the Education Department's case. She also elicited testimony from four witnesses: Paul Walmsley, Ed.D., Director of Personnel for the Milford School District; Patrick Williams, Assistant Superintendent of the Smyrna School District; Clarence E. "Buddy" Lloyd, the former Assistant Superintendent of the Smyrna School District; and Charles J. Simpson, an investigator for the Education Department. Mr. Morabito testified on his own behalf, and presented testimony from three witnesses: Mr. Simpson, Mr. Williams, and Mr. Lloyd.[11]

---

[10] *Id.* at 6.

[11] Mr. Morabito was denied requests to depose or question other witnesses based on his failure to subpoena additional witnesses prior to the deadlines set forth by Mr. Kenton.

8

On March 15, 2017, the Hearing Officer issued a fifty-three page written decision and proposed order which thoroughly set forth the factual and procedural background of the case to include summaries of: (1) correspondence between the parties, as well as correspondence between the parties and the Standards Board; (2) pre-hearing orders issued by the Hearing Officer; (3) evidence introduced by the parties, objections to that evidence, and the Hearing Officer's determination of whether or not he would consider the evidence in his ultimate decision on the matter; (4) testimony of the witnesses presented; and (5) the Hearing Officer's decision to deny Mr. Morabito's request for a continuance, in order to subpoena additional witnesses and evidence. As the Hearing Officer's summaries were extremely thorough, the Court declines to re-state, in detail, all of the Hearing Officer's findings.

Ultimately, the Hearing Officer determined that the Education Department satisfied its burden of proving that Mr. Morabito was terminated or dismissed from his position with the Milford School District for immorality, as he falsified his responses on an employment application. Specifically, Mr. Morabito's response to the employment application, as to whether or not he had ever been dismissed from an employment position, was misleading because he failed to disclose that he was previously dismissed from the Smyrna School District for Neglect of Duty. Mr. Morabito also failed to disclose that he was dismissed from Smyrna School District when asked on the employment application whether he ever had a "contract non-

9

renewed, non-extended or been dismissed from employment."[12] The Hearing Officer found that there was sufficient evidence presented to show that Mr. Morabito was terminated from the Smyrna School District in 2009 and his termination was for Neglect of Duty. Therefore, Mr. Morabito's responses on his employment application to the Milford School District were false. Based upon the foregoing, the Hearing Officer recommended that the Secretary's proposed action to revoke Mr. Morabito's teaching license and certificates should be affirmed.

On April 6, 2017, Mr. Morabito requested a "verbal rebuttal," before the Standards Board, of the Hearing Officer's recommendation to revoke his teaching license and certificates. Mr. Morabito claimed that the Hearing Officer permitted a witness to lie during the previous hearing. He also claimed that it was improper for the Hearing Officer to deny his request to introduce a video into evidence. Next, Mr. Morabito claimed that he was lied to throughout the entire process. More specifically, Mr. Morabito objected to: (1) the denial of his request to have a hearing before the entire Standards Board; (2) the denial of his request to subpoena witnesses and introduce additional documents; (3) his lack of involvement with the investigation by the Education Department; (4) the denial of his request for additional time to present his case; and (5) the time limitation of his closing argument.

On May 4, 2017, the Standards Board provided Mr. Morabito an opportunity to present oral argument regarding his objections raised in his April 6, 2017 letter. Among other things, Mr. Morabito emphasized that he believed that his original

---

[12] *Id.* at 51.

termination from the Smyrna School District was unfair as it was supported by untruthful testimony. Mr. Morabito also again complained that the hearing before the Standards Board was cut short by the Hearing Officer. And, he objected to numerous evidentiary decisions of the Hearing Officer. Next, Mr. Morabito argued that he should have been granted a continuance to gather additional evidence and subpoena additional witnesses. Finally, Mr. Morabito believed the recommendation of the Hearing Officer to revoke his teaching license was "grossly out of proportion to the offense" because he did not conceal the fact that he was terminated and there is a difference of opinion as to the reasons why he was terminated from the Smyrna School District.

On May 25, 2017, the Standards Board issued a final order. The Standards Board decided to adopt, as its own, the Hearing Officer's recommended conclusion that Mr. Morabito engaged in misconduct when he falsely represented the reason for his termination from the Smyrna School District on a employment application that he submitted to the Milford School District. The Standards Board also adopted the Hearing Officer's recommended conclusion that due process requirements were satisfied. However, the Standards Board rejected the Hearing Officer's recommendation to revoke Mr. Morabito's teaching license and certificates. Instead, the Standards Board found that a two-year suspension of Mr. Morabito's license and standards certificates was more appropriate under the circumstances.

On June 23, 2017, Mr. Morabito appealed the Standards Board's decision to this Court.

On July 26, 2017, the Court issued a Brief Schedule Notice. The Court

11

identified the following dates for the parties briefings in this matter:

Opening Brief:    August 21, 2017

Answering Brief:  September 11, 2017

Reply Brief:      September 25, 2017

On August 21, 2017, Mr. Morabito filed his Opening Brief. His arguments are set forth in the next section.

On September 11, 2017, the Standards Board filed its' Answering Brief. The Standards Board's arguments are set forth in the next section.

On September 18, 2017, Mr. Morabito filed a "Motion to Dismiss." In the motion, he urges the Court to disregard the Standards Board's Answering Brief because, according to Mr. Morabito, the Answering Brief is untimely. Mr. Morabito claims that the Standards Board failed to mail its' Answering Brief until September 13, 2017. It was not sent certified and he claims that he did not receive it until September 15, 2017. Therefore, Mr. Morabito requests the Court to dismiss the Standards Board's suspension of his license to teach, with prejudice, as the Standards Board was untimely in answering his appeal.

On September 25, 2017, Mr. Morabito filed his Reply Brief. Mr. Morabito again claims that the Standards Board's Answering Brief was untimely. Therefore, Mr. Morabito believes that it is invalid and does not require a response from him. He asks "that his license suspension be overturned, that all instances of perjury be investigated and prosecuted, and that an independent investigation looking into the deprivation of his constitutional and civil rights be initiated." Mr. Morabito's additional arguments are set forth in the next section.

12

## THE PARTIES' ARGUMENTS

*1. Mr. Morabito's Opening Brief and Reply Brief*

First, Mr. Morabito contends that "the denial of [his] Due Process rights by Milford was unconstitutional."

Second, Mr. Morabito contends that it was improper for the Secretary of the Education Department to wait eight months to investigate his termination from the Milford School District.

Third, Mr. Morabito contends that the Education Department's investigation was conducted improperly because he was never interviewed by the department's investigator nor was he provided with a list of "similar offences [sic] and punishments." And, apparently, the Education Department never investigated Mr. Morabito's claim that Mr. Lloyd was a "serial perjurer."

Fourth, Mr. Morabito contends that it was improper for the Hearing Officer to deny his continuance request, sent to the Board on January 30, 2017.

Fifth, Mr. Morabito contends he was denied counsel at the hearing.

Sixth, Mr. Morabito contends that "he didn't learn that the meeting was changed to a one day hearing from the original two day schedule until [he] arrived at the hearing."

Seventh, Mr. Morabito contends that he was not allowed to subpoena witnesses or documents.

Eighth, Mr. Morabito contends that the Hearing Officer wrongfully prevented him from continuing his questioning of Mr. Lloyd "after he admitted that the reason Smyrna fired [him] the second time is they thought [he] was lying like the first time

13

they fired [him]." Mr. Morabito alleges that Mr. Lloyd did not apparently claim that Mr. Morabito was fired for Neglect of Duty. Instead, Mr. Morabito believes that Mr. Lloyd's testimony establishes that he was actually fired from the Smyrna School District because he fell and was hurt.

Ninth, Mr. Morabito contends that it was improper for the Hearing Officer to deny his request to introduce a video tape depicting a fall that he suffered while employed by the Smyrna School District. Mr. Morabito alleges that he intended to introduce the video tape as evidence that a witness at the hearing, Mr. Lloyd, was a "serial perjurer."

Tenth, Mr. Morabito contends that "[w]hile the Board did hear [his] oral arguments, they neglected to consider or even discuss any of the points [he] brought to their attention." Specifically, the Board did not discuss "the equity of the offense to the punishment." And, "[t]here was no consideration that this situation has caused [Mr. Morabito] to lose 3 full time positions with benefits. (The job [he] left to take the Milford job, the Milford job, and the position [he] lost at the alternative school when [his] license was suspended/revoked.)." Moreover, the Standards Board did not consider the economic impact that Mr. Morabito suffered.

Eleventh, Mr. Morabito contends that the Standard Board's decision to suspend his license for two years does not "fit the crime." Later in his brief, he describes it as "arbitrary and capricious." He claims that he submitted the same application, in dispute here, to apply for many jobs. In those interviews he was asked about his termination from the Smyrna School District, and he contends that he explained his termination in further detail. Milford School District apparently did not ask Mr.

14

Morabito about his prior termination.

*2. The Board's Answer*

First, the Standards Board contends that its decision should be affirmed because it is supported by overwhelming evidence that stands un-rebutted by Mr. Morabito.

Second, the Standards Board contends that its decision should be affirmed because it is free from legal error. More precisely, the Standards Board contends that its decision was not "arbitrary and capricious," and Mr. Morabito was afforded Due Process of Law.

## STANDARD OF REVIEW

For administrative appeals, this Court limits its review to whether an administrative board's decision is supported by substantial evidence and is free from legal error.[13] Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion."[14] It is "more than a scintilla, but less than a preponderance of the evidence."[15] In reviewing the Standards Board's decision, the Court is to avoid acting as a "trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and

---

[13] 29 *Del. C.* § 10142(d); *Avon Prods. v. Lamparski*, 293 A.2d 559, 560 (Del. 1972).

[14] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. Super. 1981) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996)).

[15] *Id.* (quoting *Cross v. Califano*, 475 F.Supp. 896, 898 (M.D. Fla. 1979)).

conclusions."[16] On the other hand, the Court will find an abuse of discretion if the Standards Board "acts arbitrarily or capriciously . . . or exceeds the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice."[17]

## DISCUSSION

### A. Mr. Morabito's "Motion to Dismiss"

Mr. Morabito contends that the Court should disregard the Standards Board's Answering Brief and reverse the suspension of his teaching license because the Answering Brief was untimely. More precisely, Mr. Morabito claims that the Answering Brief was not mailed to him until September 13, 2017, and he did not receive it until September 15, 2017.[18] He also claims that it was not sent by certified mail. Even if Mr. Morabito's claims are true, however, he is not entitled to relief under these circumstances because the Standards Board's alleged error in mailing was *de minimus* in light of the board's timely filing of the Answering Brief with the Prothonotary.

The Brief Schedule issued by the Court, in conjunction with Superior Court Civil Rule 72(g), stipulates that the Standards Board was required to serve *and* file

---

[16] *Johnson v. Chrysler Corp.*, 213 A.3d 64, 66 (Del. 1965).

[17] *Del. Transit Corp. v. Roane*, 2011 WL 3793450, at *5 (Del. Super. Aug. 24, 2011).

[18] The Court notes that Mr. Morabito has not provided the Court with any evidence of this contention. It would have been helpful to the Court if he had provided the mailing envelope that he received. Nonetheless, the Court will consider his allegations as if they are true.

16

an Answering Brief no later than September 11, 2017.[19] Nevertheless, in this case, even if the Court believes Mr. Morabito's contention that the Standards Board failed to mail him a copy of the board's Answering Brief until September 13, 2017, the Court is not inclined to grant him the relief he requests because the docket indicates that the board properly filed its Answering Brief with the Prothonotary on September 11, 2017. In other words, the Standards Board's alleged error in service is not substantial enough, in light of its timely filing, for the Court to disregard the board's Answering Brief. Moreover, Mr. Morabito has not alleged any prejudice as a result of receiving the brief four days late.

As to Mr. Morabito's objection to the form of mailing, under these circumstances, the Court is not aware of any rule that requires service by certified mail.

Therefore, in light of the foregoing, Mr. Morabito's "Motion to Dismiss" is **DENIED.**

*B. Mr. Morabito's Grounds for Appeal*

*1. The Milford Board's denial of Mr. Morabito's request for a hearing regarding his termination from the Milford School District*

Mr. Morabito contends that he was denied due process by the Milford Board

---

[19] Super. Ct. Civ. R. 72(g) provides in pertinent part:

The appellant's brief shall be served and filed 20 days after the date of said filing of such record as provided in Rule 72(e). The appellee's answering brief shall be served and filed 20 days thereafter. The appellant shall serve and file the reply brief, if any, not later than 10 days thereafter.

17

because he was not afforded a hearing to discuss the recommended termination of his employment from the Milford School District. He claims that he requested a hearing before the Milford Board but was denied because the board did not receive his request in time. Mr. Morabito alleges that such a denial violates due process.

Unfortunately for Mr. Morabito, the scope of these proceedings does not permit the Court to review the Milford Board's decision to deny him a hearing. Instead, this proceeding is limited to reviewing the decision of the Standards Board. Seeing as the Standards Board would not have jurisdiction to review the decision of the Milford Board, the Court cannot now consider the Milford Board's decision in this appeal.

### 2. *The Secretary's Eight Month Delay*

Mr. Morabito contends that it was improper for the Secretary of the Education Department to wait eight months before initiating an investigation of Mr. Morabito's termination from the Milford School District. Mr. Morabito raised a similar, albeit slightly different, argument to the Hearing Officer below. The Hearing Officer understood the basis for Mr. Morabito's objection to be, whether or not the Department of Education notified Mr. Morabito in accordance with 14 *Del. C.* § 1218.[20] The Court agrees with the Hearing Officer's decision to apply § 1218, especially considering that Mr. Morabito has not directed the Court to consider another provision of the Delaware Code or any rules specifically pertaining to the Education Department.

Pursuant to 14 *Del. C.* § 1218, Mr. Morabito was entitled to notice of the

---

[20] *See* Recommendation of Hearing Officer at 8-9.

following:

> (g) . . . The [Education] Department shall give written notice to any license holder of any notification received under this subsection to the license holder's last known address. Such notification shall be made within 15 days of receipt of the district or charter school's report to the Department of misconduct under this subsection. . . .

> (h) . . . The [Education] Department shall give written notice within a reasonable period of time to a license holder of any investigation initiated hereunder to the license holder's last known address. . . .

The Hearing Officer determined that the Education Department satisfied both of these requirements as a result of the department's letter to Mr. Morabito, sent on November 16, 2015.[21] The Court agrees with the Hearing Officer's determination for three reasons. First, citing 14 *Del. C.* § 1218(g), the letter informs Mr. Morabito that the Education Department received notice of his termination from the Milford School District for immorality - falsification of employment records.[22] Second, citing 14 *Del. C.* § 1218(h), the letter informs Mr. Morabito that the Secretary of the Education Department has initiated an investigation.[23] Third, a certified mailing receipt demonstrates that the letter was sent to Mr. Morabito's last known mailing address on November 16, 2016, and was signed by Lisa Morabito.[24]

---

[21] *See* Recommendation of Hearing Officer at 48; *see also* Professional Standards Board Ex. R-18.

[22] *Id.*

[23] *Id.*

[24] *Id.*

19

In sum, there was substantial evidence for the Hearing Officer to conclude that Mr. Morabito received notice sufficient to satisfy 14 *Del. C.* § 1218(g) & (h).

### 3. The Department's Investigation

Mr. Morabito contends that the Education Department's investigation was conducted improperly because he was never interviewed by the department's investigator nor was he provided with a list of "similar offences [sic] and punishments." And, apparently, the Education Department never investigated Mr. Morabito's claim that Mr. Lloyd was a "serial perjurer."

The Hearing Officer's Recommendation acknowledges that Mr. Morabito raised these concerns at the hearing through the testimony of Charles J. Simpson, an investigator for the Education Department.[25] However, the Hearing Officer did not consider Mr. Morabito's objections in the Hearing Officer's conclusions of law analysis.[26] The Court presumes that the Hearing Officer declined to consider the first two concerns because there is no indication that the Education Department was required to interview Mr. Morabito or provide him with a list of similar offenses and punishments.[27] The Court agrees with this determination, especially considering that Mr. Morabito has not presented a single shred of evidence to contradict it. As to Mr. Lloyd's testimony, the Hearing Officer was perfectly capable of assessing his

---

[25] *See* Recommendation of Hearing Officer at 32-35.

[26] *Id.* at 44-52.

[27] *Id* at 32-35 (Mr. Simpson testified that "there is not a statute or Department of Education requirement that a person under investigation be interviewed.").

20

credibility as the finder of fact. Thus, it is insignificant that Mr. Simpson failed to investigate Mr. Morabito's bare claim that Mr. Lloyd was a "serial perjurer."

In sum, the Hearing Officer did not commit an error of law regarding Mr. Morabito's third contention.

> *4. The Hearing Officer's denial of Mr. Morabito's continuance request to subpoena documents and witnesses*

On January 30, 2017, Mr. Morabito requested his second continuance of the Standards Board's previously scheduled hearing because he needed more time to (1) obtain an attorney and (2) review the Standards Board's rules of procedure in order to depose witnesses and subpoena evidence. The Hearing Officer, relying upon subsection 2.9 of the *Professional Standards Board Hearing Procedures and Rules*,[28] denied Mr. Morabito's request for a continuance to obtain counsel because he had previously been granted a continuance on the same basis. In addition, the Hearing Officer denied Mr. Morabito's request for additional time to depose witnesses and

---

[28] Subsection 2.9 of the *Professional Standards Board Hearing Procedures and Rules* provides *in toto*:

> The Standards Board may continue, adjourn or postpone proceedings for good cause at the request of a party or on its own initiative. Absent a showing of exceptional circumstances, requests for postponements of any matter scheduled to be heard by the Standards Board shall be submitted to the Executive Director in writing at least three (3) business days before the date scheduled for the proceeding. The Chair of the Standards Board shall then decide whether to grant or deny the request for postponement. If a hearing officer has been appointed, the request for postponement shall be submitted to the hearing officer, who shall decide whether to grant or deny the request.

subpoena evidence because Mr. Morabito's hearing had already been continued once for two months and Mr. Morabito had previously been provided with a copy of the Standards Board's procedures and rules as early as June 2016. Mr. Morabito contends that the Hearing Officer's decision to deny his continuance request was in error.

The Court cannot agree with Mr. Morabito's contention, particularly in light of the axiom that "an administrative agency's interpretation of its rules [is] presumptively correct."[29] This deference is given to "an administrative agency's construction of its own rules in recognition of its expertise in a given field."[30] Accordingly, "an administrative agency's interpretation of its rules will not be reversed unless 'clearly wrong.'"[31] But where it appears that the rights created or benefits conferred by an agency's construction of its rules are contrary to their plain meaning, reversal is required.[32]

In this case, there is no indication that the Hearing Officer's decision to deny Mr. Morabito's continuance request was "clearly wrong." Rather, it appears that, on more than one occasion, the Hearing Officer provided significant deference to Mr. Morabito as a *pro se* litigant. Nonetheless, Mr. Morabito failed to provide a satisfactory basis to continue his hearing for a second time. Therefore, the Court

---

[29] *Div. of Soc. Serv. v. Burns*, 438 A.2d 1227, 1229 (Del. 1981).

[30] *Id.* (citing *Diebold, Inc. v. Marshall*, 585 F.2d 1327 (6th Cir. 1978).

[31] *Id.* (citing *Peterson v. Hall*, 421 A.2d 1350, 1353 (Del. 1980).

[32] *Id.*

finds that Mr. Morabito's objection to the Hearing Officer's denial of his continuance request is without merit.

### 5. Mr. Morabito's contention that he was denied counsel at the hearing

Mr. Morabito contends that he was denied counsel at his hearing before the Hearing Officer. Although Mr. Morabito did not specifically identify how he was denied counsel, the Court presumes that Mr. Morabito believes the Hearing Officer improperly prevented him from obtaining counsel as a result of the Hearing Officer's denial of his second continuance request, mentioned in the previous section. Mr. Morabito's contention is utterly without merit because, as the Court previously explained, the Hearing Officer's decision to deny the continuance request was not "clearly wrong." Moreover, it is not the Hearing Officer's or the Standards Board's fault that Mr. Morabito failed to obtain representation, especially considering that he had more than seven months, from the date of the Secretary's notice of the intent to revoke his teaching license, to do so.[33]

### 6. Notice of the hearing length

Mr. Morabito claims that he was not aware that the evidentiary hearing before the Hearing Officer had been shortened, from two days to a single day, until he arrived at the hearing. Mr. Morabito's actual knowledge, however, is irrelevant because he admitted at the evidentiary hearing that he received notice of the hearing from the Executive Director, Chris Kenton, specifying that the hearing was scheduled

---

[33] *See* Recommendation of Hearing Officer at 44.

for a single day, February 22, 2017 at 8:30 a.m.[34] The notice does not provide for any additional time. Therefore, if Mr. Morabito anticipated that he would need an additional day to present his case, he should have requested it in accordance with the rules and procedures of the Standards Board. As he failed to do so, the Court is not compelled to grant him relief because the claimed error is actually his own.

*7. Mr. Morabito's alleged misunderstanding of the process to subpoena witnesses and documents.*

Mr. Morabito claims that he was not allowed to subpoena witnesses or documents. However, this claim is utterly without merit, and does not constitute a basis for relief, because Mr. Morabito's inability to subpoena witnesses and documents is wholly the result of his own failure to comply with the Standards Board's rules and procedures. For instance, instead of requesting subpoenas for witnesses and evidence at least fifteen business days before the date of his evidentiary hearing, as required by the Standards Board's rules, Mr. Morabito attempted on multiple occasions during the hearing to have the Hearing Officer obtain evidence for him.[35] As it is the Hearing Officer's responsibility to conduct the hearing and issue a proposed order,[36] not to gather evidence on behalf of the parties, the Hearing Officer

---

[34] *See* Transcript of Evidentiary Hearing at 224-25.

[35] *See, e.g.,* Transcript of Evidentiary Hearing at 377-38 (where Mr. Morabito asks the Hearing Officer to "do some fact checking and maybe talk to the presidents of the Ethics Board, who I did work for before, and ask him if there were instances where I refused to change students grades, and ask him about my abilities as a teacher and whether I have truthfulness or veracity.")

[36] 29 *Del. C.* § 10125(a).

24

was clearly justified in refusing to comply with Mr. Morabito's requests. In the alternative, Mr. Morabito requested three separate continuances so that he might subpoena additional witnesses himself.[37] The Hearing Officer denied Mr. Morabito's requests because Mr. Morabito failed to demonstrate "exceptional circumstances"[38] as to why he did not subpoena the witnesses within the fifteen day time limit proscribed by the Standards Board's rules.[39]

Like Mr. Morabito's second continuance request,[40] the Court cannot find that the Hearing Officer was "clearly wrong" by denying what constituted Mr. Morabito's third, fourth, and fifth continuance request.[41] Instead, it is again apparent that Mr. Morabito failed to comply with the Standards Board's rules and procedures by failing to request subpoenas within the proscribed time limitation. As Mr. Morabito is required to abide by the Standards Board's rules, even as a *pro se* litigant, the Court is unable to grant him relief. Therefore, the Court finds that Mr. Morabito's contention, that he was denied an opportunity to subpoena evidence, is without merit.

---

[37] *See* Recommendation of Hearing Officer at 44-45.

[38] *See Professional Standards Board Hearing Procedures and Rules* subsection 2.9 (whereby the Standards Board may not continue a proceeding absent "exceptional circumstances" if a party fails to submit a written request to the Executive Director of the Standards Board at least three business days before the date scheduled for the proceeding).

[39] *See* Recommendation of Hearing Officer at 44-45.

[40] *See supra* p. 18-19 and accompanying notes.

[41] *See* Recommendation of Hearing Officer at 44-45.

### *8. Mr. Lloyd's testimony*

Mr. Morabito contends that it was improper for the Hearing Officer to prematurely terminate Mr. Morabito's questioning of the former Smyrna School District Assistant Superintendent, Clarence E. "Buddy" Lloyd. Mr. Morabito believes that if he was permitted to continue his questioning, he would have been able to establish that he was not actually terminated from the Smyrna School District for neglect of duty. Rather, he believes that he was terminated due to an injury that he suffered while employed at Smyrna. There is one glaring problem with this contention, however. The Superior Court, on two separate occasions, and the Delaware Supreme Court both determined that Mr. Morabito had been fired from the Smyrna School District for neglect of duty.[42] Therefore, as the Hearing Officer is bound by the courts' prior decisions, it was not in error for the Hearing Officer to deny Mr. Morabito's attempt to re-litigate the purpose of his termination from the Smyrna School District. In sum, Mr. Morabito is not entitled to relief regarding this issue.

### *9. The videotape of Mr. Morabito's injury*

Mr. Morabito's ninth contention is that it was improper for the Hearing Officer to deny his request to introduce a videotape depicting a fall that he suffered while employed by the Smyrna School District. Mr. Morabito believes that the video would have demonstrated that Mr. Lloyd had lied during previous proceedings before the

---

[42] *See Morabito v. Bd. of Educ. of Smyrna Sch. Dist.*, C.A. No. 09A-09-005 (Del. Super. July 15, 2010); *Morabito v. Bd. of Educ. of Smyrna Sch. Dist.*, 2011 WL 1887548 (Del. May 16, 2011) (TABLE); *Morabito v. Indus. Accident Bd.*, C.A. No. K11A-10-005 (Del. Super. Jun. 29, 2012).

Superior Court and the Industrial Accident Board. The Hearing Officer denied Mr. Morabito's request to introduce the videotape because it was completely irrelevant to the proceeding.[43] The Court agrees, because the Hearing Officer was perfectly capable of testing the veracity of Mr. Lloyd's testimony without the necessity of a video that had nothing to do with the issue before the Hearing Officer. If anything, introduction of the video would have likely led to Mr. Morabito attempting to re-litigate issues already decided by the Superior Court and the Delaware Supreme Court. Thus, the Court finds that it was not improper for the Hearing Officer to exclude the videotape.

### 10. The facts considered by the Standards Board

Mr. Morabito's tenth claim for relief appears to center upon the Standards Board's alleged failure to consider the economic impact that Mr. Morabito has, and will likely, suffer as a result of the suspension of his license.[44] After reviewing the Standards Board's Final Order, however, the Court can safely conclude that Mr. Morabito's contention is false.

The Court directs Mr. Morabito's attention to page seven and eight of the Standards Board's Final Order. It states, in pertinent part:

> Finally, the Board deliberated on the Hearing Officer's recommendation that revocation is appropriate discipline thus affirming Secretary Godowsky's proposed action. The Board rejected this recommendation

---

[43] *See* Transcript of Evidentiary Hearing at 330-32.

[44] Mr. Morabito also contends that the Standards Board failed to consider "the equity of the offense to the punishment." As the Court believes this overlaps with his eleventh contention, the Court will address Mr. Morabito's objection as part of that analysis.

27

and found that a two-year suspension of Mr. Morabito's license and standards certificates is more appropriate discipline. The Board discussed that falsifying an employment application is misconduct that warrants some form of discipline. The Board also discussed that discipline should fit the nature of the misconduct and that revocation is the severest form of discipline available in license disciplinary actions. *The Board noted that if Mr. Morabito's license is suspended, he would not be permitted to work in Delaware public schools and his suspension must be reported.*[45]

The Court emphasized the final sentence of quoted language because it indicates to the Court that the Standards Board did in fact consider the economic impact that Mr. Morabito would suffer if his license was suspended. Moreover, the fact that the Standards Board decided to reduce Mr. Morabito's punishment from revocation to the suspension of his license, indicates to the Court that the Standards Board was more than aware of the impact that its decision would have on Mr. Morabito. Therefore, the Court concludes that Mr. Morabito's tenth contention is without merit.

*11. The Standards Board's decision to suspend Mr. Morabito's teaching license and certificates*

Mr. Morabito's final contention, in essence, is that it was unfair to suspend his license for what he considers "paperwork violations."[46] In legal terms, he contends that the Standards Board's decision to suspend his license was "arbitrary and

---

[45] The Standards Board's Final Order at 7-8 (emphasis added).

[46] He also attempts to cast blame upon the Milford School District for not questioning Mr. Morabito regarding his misleading answers on his application. The immaturity of this contention is astounding. Moreover, it has nothing to do with the Court's analysis of the Standards Board's decision. Therefore, the Court does not find it necessary to discuss it any further.

capricious." Neither contention has any merit, however.

The choice of a penalty by an administrative agency is a matter of discretion to be exercised solely by the agency, as long as it is based on substantial evidence and not outside of its statutory authority.[47] In reviewing the penalty imposed by the Standards Board, the question for the Court is not whether this Court would have imposed the same penalty as that imposed by the board, but whether such punishment is so disproportionate to the offense in light of all the circumstances as to be shocking to one's sense of fairness.[48]

In this case, the Court does not find that the Standards Board's punishment is disproportionate in light of the circumstances because Mr. Morabito's offense constituted more than just, as he contends, a mistake in filling out paperwork. Instead, it is apparent that he intentionally concealed pertinent information regarding his termination from the Smyrna School District. And, regardless of his beliefs, he concealed this information in direct contradiction to three separate Delaware court opinions that specifically identified the real reason for his termination. Therefore, it is unsurprising that the Standards Board felt it necessary to impose a harsh punishment, as Mr. Morabito has continuously demonstrated his inability to accept the consequences of his actions.

In sum, it was not in error for the Standards Board to suspend Mr. Morabito's

---

[47] *Crocco v. Bd. of Med. Practice*, 1990 WL 105056, at *3 (Del. Super. July 13, 1990) (citing *Warmouth v. State Bd. of Examiners in Optometry*, 514 A.2d 1119, 1123 (Del. Super. 1985)).

[48] *Id.* at *8.

29

teaching license for two years.

## CONCLUSION

In light of the Court's foregoing analysis, Mr. Morabito's "Motion to Dismiss," filed on September 18, 2017, is **DENIED**. And, Mr. Morabito's appeal is **DENIED**. Accordingly, the decision of the Delaware Professional Standards Board is **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ William L. Witham, Jr.*
Resident Judge

WLW/dmh