# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| SENAD CEMERLIC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N22A-11-008 PAW |
| | ) | |
| DELAWARE BOARD OF MEDICAL | ) | |
| LICENSURE AND DISCIPLINE, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: March 23, 2024
Decided: May 30, 2024

*Upon Appeal from the Delaware Board of Medical Licensure and Discipline;*
**AFFIRMED.**


## <u>MEMORANDUM OPINION AND ORDER</u>

Adam L. Balick, Esq. and Melony Anderson, Esq., of Balick & Balick, LLC.
*Attorneys for Appellant.*

Eileen Kelly, Esq. and Jennifer Singh, Esq., of the Delaware Department of Justice.
*Attorney for Appellee.*


**WINSTON, J.**

## I.    **<u>INTRODUCTION</u>**

The instant appeal stems from the Delaware Board of Medical Licensure and Discipline's (the "Board") decision to deny Senad Cemerlic's application for a medical license.[1] In its November 1, 2022 Final Decision and Order (the "Final Decision"), the Board denied Cemerlic's application on the grounds that (1) he did not meet the requirements for licensure, and (2) insufficient evidence was presented to establish that Cemerlic could practice medicine in a manner that would not endanger the public health, safety, and welfare of Delawareans.[2] On appeal, Cemerlic contends the Board erred as a matter of law by holding that it did not have the statutory authority to issue a restricted medical license.[3] The Court's review of the record reveals that the Board's Final Decision lacks legal error and is supported by substantial evidence. Therefore, the Final Decision is **AFFIRMED.**

## II.    **<u>FACTS AND PROCEDURAL HISTORY</u>**

Cemerlic was issued a Delaware medical license on August 1, 2006.[4] He worked as a Board-certified anesthesiologist practicing in the chronic pain management subspecialty.[5] Cemerlic maintained a private practice with offices in

---

[1] Record ("Tab") A.
[2] Tab A at 5-6.
[3] Op. Br. at 16.
[4] *Id.* at 3.
[5] *Senad Cemerlic, M.D., Lic. No. C1-0008124*, Recommendaton of Chief Hearing Officer at 1 (Del. Bd. of Med. Licensure and Discipline, Apr. 12, 2017).

Smyrna and Dover and was a certified provider for both Medicare and Medicaid patients.[6] Following an investigation by the Delaware Department of Justice, he was arrested in September 2015 and charged with six counts of healthcare fraud.[7] Cemerlic allegedly submitted numerous fraudulent medical claims to Medicaid, Medicare, and private health insurers by billing for hundreds of urine drug screens then ignoring the results of those screens.[8]

In June 2016, Cemerlic pled guilty to one count of health care fraud and was sentenced to probation, 200 hours of community service, and $200,000 in restitution.[9] The State also filed a professional licensure complaint against Cemerlic in August 2016.[10] The complaint alleged Cemerlic violated the Delaware Medical Practice Act and regulations adopted by the Board.[11] After a three-day hearing, the Chief Hearing Officer ("Hearing Officer") issued written findings of fact with a recommendation that the Board suspend Cemerlic's license for eighteen months followed by four years of probation.[12] Notwithstanding the Hearing Officer's

---

[6] *Id.*
[7] *Id.* at 1-2; Ans. Br. at 2.
[8] *Id.*
[9] Recommendation of Chief Hearing Officer at 3.
[10] *Id*. at 1. The State's complaint was amended in December 2016. *Id*.
[11] *Id*. at 2-3.
[12] Op. Br. at 3.

recommendation, on June 8, 2017, the Board revoked Cemerlic's medical license.[13] Cemerlic did not appeal the Board's decision.[14]

Approximately four years later, Cemerlic reapplied for a new medical license.[15] After reviewing his application, the Board informed Cemerlic that it proposed to deny his application because he could not meet necessary statutory requirements for licensure.[16] Specifically, the Board proposed to deny his application under: (1) 24 *Del. C.* § 1720(b)(4)(a) and (i), due to Cemerlic's inability to submit a sworn statement that he had not been convicted of a crime substantially related to the practice of medicine and he has not been professionally penalized or convicted of fraud; and (2) 24 *Del. C.* § 1720(b)(4)(c), because his license was previously revoked by the Board.[17] The Board further advised Cemerlic of his right to request a hearing before the Board if he believed he met the statutory qualifications for licensure or if he sought a waiver of those statutory requirements.[18] Cemerlic requested a hearing, but did not provide the grounds on which his application should be granted.[19] An evidentiary hearing (the "Hearing") followed.

---

[13] *Id*.
[14] *Id.*
[15] *Id*; Tab C at 6.
[16] Tab C at 3.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 2.

4

Cemerlic attended the Hearing with counsel. Cemerlic's counsel began by acknowledging that the Board can waive the statutory requirements, if it is satisfied that Cemerlic can safely practice medicine.[20] Counsel then explained Cemerlic's plan if the Board granted his application.[21] Cemerlic committed to completing a program designed to refresh his skills at Drexel University, before beginning to practice medicine.[22] Cemerlic could not start the program, however, until he was licensed to practice medicine.[23] Counsel reminded the Board that due to Cemerlic's revocation, he was excluded from participating in a clinical practice that billed Medicare or Medicaid for approximately 5 years.[24] Instead of working alone, as he had done previously, Cemerlic planned to work for an employer.[25] Cemerlic contemplated working as a general family physician, as a medical director of an insurance company, or in a correctional facility.[26] Counsel summed up his remarks by explaining that Cemerlic is "amenable to having the [B]oard [] actually grant his application and put guardrails in place, whether those guardrails are probation or something more specific about the type of setting that the [B]oard would feel

---

[20] Tab B at 8:16-20 and 11:4-8.
[21] *Id*. at 11:9-13.
[22] *Id*. at 11:22-12:16 and 23:17-24.
[23] *Id*. at 56:15-17.
[24] *Id*. at 13:6-21 and 14:11-17.
[25] *Id*. at 14:18-21.
[26] *Id*. at 24:1-8, 27:23-28:6, and 42:2-21.

comfortable with him working in, at least initially."[27]  This was the first time Cemerlic suggested not only that the Board issue him a license with conditions, but also that the Board craft those conditions.

When questioned by the Board regarding specific conditions for licensure, counsel responded "from our approach we're very open to coming up with a set of guardrails that makes sense for everyone."[28]  Next, the Board inquired how Cemerlic envisioned the conditions be implemented.[29]  Counsel responded that the Board could limit his practice of medicine through the licensing process or through the disciplinary process and place Cemerlic on probation for a period of time.[30]  In turn, the Board noted Cemerlic failed to include any proposed licensure limitations or competency plan in his 100-plus page application.[31]  Before deliberations, the Board confirmed that counsel conferred with Cemerlic regarding coupling license approval with discipline.[32]

The Board held deliberations at the Hearing.[33]  First, the Board acknowledged its goal to ensure Delawareans are adequately protected.[34]  Next, the Board discussed

---

[27] Tab B at 15:22-16:6.
[28] *Id*. at 37:7-9.  *See also*, *id*. at 37:24-38:3 ("you can hear from his approach he's very open to coming up with a set of guardrails that gives this board comfort").
[29] *Id*. at 38:16-39:3.
[30] *Id*. at 39:8-40:3.
[31] *Id*. at 40:4-21 and 54:4-9.
[32] *Id*. at 50:23-51:4.
[33] *Id*. at 57:16-19.
[34] *Id*. at 58:24-59:2.

its discomfort with Cemerlic's proposal. The Board expressed its concern with granting a license with limitations or subject to probation when it did not know the specific limitations or conditions.[35] It also noted it would be more comfortable if it possessed outlined limitations because there are vast condition options available.[36] The Board articulated its preference that Cemerlic craft the process and conditions for the Board's review.[37] The Board concluded that there was no framework that would make it certain that Cemerlic would not reoffend.[38] The Board then voted to deny his application.[39]

In its Final Decision, the Board outlined the evidence introduced at the Hearing.[40] Then, it explained that it is charged with ensuring the medical practice in Delaware is conducted professionally and competently in the interests of public health, safety, and welfare.[41] The Board found the evidence insufficient to establish

---

[35] Tab B at 65:16-19 ("it would be very unusual to … grant a license with these guardrails when we don't know what the guardrails are").

[36] *Id*. at 60:4-5 ("I'm more comfortable if we had those [guardrails] outlined"); 70:11-23 ("I think there's a lot of openness in terms of options maybe available, maybe not even available to come forward with this. But right now, you know, could he apply to be a trainee again to get back into it? I don't know. But I don't think it's our job to do that. I'm not comfortable yet").

[37] *Id.* at 61:15-19.

[38] *Id*. at 62:16-20 ("I'm still a little concerned about falling into old ways. And I don't know if there's any way we can guarantee that no matter what we ask"); 74:12-19 ("It looks like we're not going to be able to find the kind of framework that's going to make us 100 percent certain it's not going to happen again").

[39] Tab A at 6.

[40] *Id*. at 2-5.

[41] *Id*. at 5.

that Cemerlic could practice medicine in such a manner.[42]  Therefore, the Board determined that Cemerlic did not meet the requirements for licensure to practice medicine and denied his application.[43]

Cemerlic's only contention on appeal is that the Board held it did not have statutory authority to issue a restricted medical license.[44]  In support of this argument, Cemerlic insists the Board did not understand the scope of its statutory authority because it was not given clear guidance by its counsel regarding its "inherent power" to issue a restricted license.[45]  He believes this left the Board with a "binary choice: award an unrestricted license or deny the application."[46]  In response, without conceding the Board's statutory authority to grant a restricted license, the Board argued even with restrictions, the Board lacked confidence that Cemerlic could practice medicine safely.[47]

## III.   STANDARD OF REVIEW

When an administrative board's decision is appealed, this Court is limited to reviewing whether the board's decision is supported by substantial evidence and free

---

[42] *Id*. at 6.
[43] *Id*.
[44] Op. Br. at 16.
[45] *Id.* at 22.
[46] *Id.* at 21.
[47] Ans. Br. at 7.

from legal errors.[48] In making its assessment, the Court is not authorized to make its own factual findings, assess credibility of witnesses or weigh the evidence.[49] If the board's findings and conclusions are found to be based upon substantial evidence and there is no error of law, the board's decision must be affirmed.[50]

## IV. ANALYSIS

The issue raised on appeal is whether the Board erred as a matter of law when it held that it did not have the authority to issue Cemerlic a restricted medical license.[51] The Board, however, did not hold such. Therefore, this issue is not properly before the Court.[52] Cemerlic further argues that the Board did not understand its authority to grant him a restricted license.[53] This argument is without

---

[48] *Cooper v. Del. Bd. of Nursing*, 2021 WL 754306, at *2 (Del. Super. Feb. 26, 2021) (citing *Eckeard v. NPC Int'l, Inc.*, 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012) (citing 29 *Del. C.* § 10142(d) (providing that, absent fraud, this Court reviews an agency's decision to determine whether it was supported by substantial evidence on the record before the agency) and *Avon Prods. v. Lamparski*, 293 A.2d 559, 560 (Del. 1972)), *aff'd*, 264 A.3d 214 (Del. 2021).
[49] *Villabona v. Bd. of Med. Prac.*, 2004 WL 2827918, at *2 (Del. Super. Apr. 28, 2004), *aff'd*, 858 A.2d 961 (Del. 2004).
[50] *Sokoloff v. Bd. of Med. Prac.*, 2010 WL 5550692, at *5 (Del. Super. Aug. 25, 2010).
[51] Op. Br. at 16.
[52] *Tatten Partners, L.P. v New Castle Cnty. Bd. of Assessment Rev.*, 642 A.2d 1251, 1262 (Del. Super. 1993) ("[W]hen this Court acts in its appellate capacity on an appeal from an administrative board, the Court will not consider issues not raised before the tribunal.") (citation omitted), *aff'd*, *New Castle Cnty v. Tatten Partners L.P.*, 647 A.2d 382 (Del. 1994).
[53] The Board also considered and rejected Cemerlic's proposal to grant him a medical license subject to probation. Although this proposal is like issuing a license with restrictions, Cemerlic does not appeal the Board's decision to deny him a license

merit. For the first time, at the Hearing, Cemerlic proposed placing "guardrails" around his medical practice and left it open to the Board to craft additional conditions. His proposed implementation of the conditions included issuing a restricted license or coupling a license with probation. The Board discussed both proposals, along with the various conditions. Ultimately, the Board could not find comfort that the proposed *conditions* would ensure Delawareans are adequately protected.

As noted, Cemerlic did not meet the statutory requirements for licensure. The Board has the discretion to waive the requirements for medical licensure by an affirmative vote of nine members if it finds all the following by clear and convincing evidence:

> (1) The applicant's education, training, qualifications, and conduct have been sufficient to overcome the deficiency or deficiencies in meeting the requirements of this section;
>
> (2) The applicant is capable of practicing medicine in a competent and professional manner;
>
> (3) The granting of the waiver will not endanger the public health, safety, or welfare; and
>
> (4) For waiver of a criminal conviction … the Board shall grant a waiver if it determines … that granting a waiver would not create an unreasonable risk to the public.[54]

---

subject to probation. It seems Cemerlic's contention is not with the Board's finding of facts and conclusions of law, but *his characterization* of the Board's legal advice. This contention is beyond the Court's scope of review on appeal.
[54] 24 *Del. C.* § 1720(e).

Here, the Board's denial is attributable to Section 1720(e)(3) and (4). When considering Cemerlic's application, including his proposed guardrails, the Board decided, in its discretion, not to waive the statutory requirements. Although some Board members expressed their willingness to give Cemerlic a "second chance," the Board could not agree that Cemerlic's medical practice, with the proposed conditions, would not endanger the public health, safety, and welfare of Delawareans. Instead, the Board preferred Cemerlic reapply with conditions clearly outlined. Therefore, the Board rejected Cemerlic's application.

## V.   CONCLUSION

After reviewing the record in its entirety, the Court finds the Board based its Final Decision on substantial evidence and legal error does not exist. Accordingly, the Final Decision to deny Cemerlic's application for a new medical license is **AFFIRMED.**


   **IT IS SO ORDERED.**


/s/ Patricia A. Winston

**Patricia A. Winston, Judge**
