# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CAESAR COOPER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N19A-12-011 CLS |
| DELAWARE BOARD OF | ) | |
| NURSING, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |
| | ) | |

Date Decided: February 26, 2021

*Upon Appellant Caesar Cooper's Appeal from the Decision of the Delaware Board of Nursing*

**AFFIRMED.**

## ORDER

Caesar K. Cooper, *Pro Se*.

Jennifer L. Singh, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for Appellee*.

**SCOTT, J.**

Before the Court is Appellant Caesar Cooper's ("Mr. Cooper") appeal of the December 19, 2019 Delaware Board of Nursing Order (the "Order"). The Delaware Board of Nursing (the "Board") found that Mr. Cooper violated Board Regulation 10.4.1. Mr. Cooper appealed the Board's decision to this Court.

The Court's review of the record shows that the Board's decision is supported by substantial evidence and without legal error or abuse of discretion. Therefore, the Board's Order is **AFFIRMED** for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

On November 15, 2017, Mr. Cooper worked the night shift at Cadia Healthcare in Wilmington, Delaware. That evening, around 11:00 pm, Mr. Cooper instructed Certified Nursing Assistant Shantaya Morris (the "CNA") that a patient ("Patient CN") would need Z-guard cream applied to his buttocks at some point during their shift together. Around 4:00 am, the CNA roused Patient CN in preparation for the application of the Z-guard cream.

According to Mr. Cooper, a routine is followed for turning patients where he (1) discusses with a certified nursing assistant ("c.n.a.") regarding how they would turn a patient, (2) instructs a c.n.a. on where to stand while turning the patient, (3)

---

[1] For the factual and procedural history of this matter, the Court relies heavily on the (1) October 9, 2019 Recommendation of the Hearing Officer and the (2) December 19, 2019 Delaware Board of Nursing Order. *See* Appellee's Answ. Br., Ex. A-B.

adjusts the height of the bed, (4) speaks to the patient prior to turning to prepare the patient for the turn, and (5) counts to three prior to the turn.

On this evening, Mr. Cooper did not follow that routine. Mr. Cooper did not discuss with the CNA regarding how they would turn Patient CN, did not direct the CNA on where to stand, did not count to three prior to turning Patient CN, and did not speak to Patient CN prior to turning. As a result, Patient CN cried out in pain when Mr. Cooper began to turn him, asked Mr. Cooper why he was being so rough, and asked Mr. Cooper if he had done something to upset him. Mr. Cooper left the room without responding to Patient CN.

Following this incident, Patient CN filed a complaint against Mr. Cooper with Cadia Healthcare ("Cadia"). Cadia began investigating Patient CN's complaint and ordered the CNA to provide a statement about the incident. On November 15, 2017, approximately twelve hours after the incident, the CNA provided a statement. The CNA's statement was consistent with Patient CN's claim that Mr. Cooper turned him roughly and did not speak to him. As a result, Cadia filed a complaint against Mr. Cooper with the Division of Long-Term Care Residents Protection ("DLTCRP") and later terminated Mr. Cooper's employment with Cadia.

On March 4, 2019, the Delaware Department of Justice ("DDOJ") filed a disciplinary complaint with the Delaware Board of Nursing against Mr. Cooper. On September 5, 2019, a hearing officer (the "Hearing Officer") convened a hearing.

2

On October 9, 2019, the Hearing Officer issued a recommendation (the ("Hearing Officer's Recommendation") and found that Mr. Cooper violated Board Regulations 10.4.1, 10.4.2.5, and 10.4.2.14. The Hearing Officer recommended to the Board that Mr. Cooper be issued a letter of reprimand, that his nursing license be placed on probation, and that he complete continuing nursing education credits.

After consideration of the Hearing Officer's Recommendation and the parties' exceptions to it, the Board found that the facts regarding the November 15, 2019 incident were insufficient to establish that Patient CN's blood clot and hematoma were caused by Mr. Cooper's actions. Consequently, the Board rejected the Hearing Officer's conclusion, detailed in the Hearing Officer's Recommendation, that Mr. Cooper violated Board Regulations 10.4.2.5 and 10.4.2.14.

However, the Board determined that Mr. Cooper, through his conduct towards Patient CN and the CNA on November 15, 2019, did not conform to the accepted standards of the nursing profession. This determination means that Mr. Cooper violated Board Regulation 10.4.1. For this violation, the Board reduced the recommended discipline by issuing Mr. Cooper a letter of reprimand for failing to competently and safely turn Patient CN and later issued an Order on December 19, 2019 that reflected these findings.

Following the Board's December 19, 2019 Order, Mr. Cooper filed this appeal.

## II. PARTIES' CONTENTIONS

Mr. Cooper contends that: (i) the Board arrived at its Decision without substantial evidence that he violated the statute; (ii) the Board violated Mr. Cooper's right to due process and committed legal error; and (iii) the Board abused its discretion in determining that Mr. Cooper violated Board Regulation 10.4.1.

The Board argues that: (i) the Board's Decision is supported by substantial evidence; (ii) the Board's Decision was free from legal error and did not violate Mr. Cooper's due process rights, (iii) the Board did not abuse its discretion when it determined Mr. Cooper's behavior toward Patient CN was a violation of Board Regulation 10.4.1.

## III. STANDARD OF REVIEW

When an administrative board's decision is appealed, this Court is limited to reviewing whether the board's decision is supported by substantial evidence and free from legal errors.[2] "Substantial evidence is that 'which a reasonable mind might accept as adequate to support a conclusion.'"[3] "The 'substantial evidence' standard of review of decisions from administrative agencies requires the reviewing court to

---

[2] *Eckeard v. NPC Int'l, Inc.*, 2012 WL 5355628, at *2 (Del. Super. Oct. 17, 2012) (citing 29 *Del. C.* § 10142(d) (providing that, absent fraud, this Court reviews an agency's decision to determine whether it was supported by substantial evidence on the record before the agency) and *Avon Prods. v. Lamparski*, 293 A.2d 559, 560 (Del. 1972)).

[3] *Id.* (quoting *Olney v. Cooch*, 425 A.2d 610, 614 (Del. Super. 1981) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966))).

search the entire record to determine whether, on the basis of all of the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[4] A board abuses its discretion where it "exceed[s] the bounds of reason in view of the circumstances" or "ignores[s] recognized rules of law or practice [] so as to produce injustice."[5]

The Court reviews questions of law *de novo*.[6] Unless the board erred as a matter of law, did not support its decision by substantial evidence, or abused its discretion, the Court will uphold the board's decision.[7]

## IV.   DISCUSSION

### A. Substantial Evidence

Mr. Cooper contends that, since the Board found that he did not violate Board Regulations 10.1.2.5 or 10.1.2.14, the record lacks substantial evidence to support the Board's conclusion that he violated Board Regulation 10.4.1. Mr. Cooper also argues that Board Regulation 10.4.1 is vague to the extent that it causes one to guess at its meaning and differ as to its application.

---

[4] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980) (citing *Winship v. Brewer School Comm.*, 390 A.2d 1089, 1092-93 (Me. 1978)).
[5] *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954).
[6] *Eckeard*, 2012 WL 5355628, at *2 (citing *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998)).
[7] *Id.* (citing *Carrion v. City of Wilmington*, 2006 WL 3502092, at *3 (Del. Super. Dec. 5, 2006)).

Mr. Cooper's argument fails. The Board is not precluded from finding that Mr. Cooper violated Board Regulation 10.4.1 where it does not find that Mr. Cooper violated Board Regulations 10.4.2.5 or 10.4.2.14. Mr. Cooper cites to *Gillespie v. Delaware Bd. of Nursing*[8] where this Court stated "[w]ithout that violation, the record lacks substantial evidence to support the evidence to support the Board's finding [of unprofessional conduct]."[9] However, under these facts, this statement does not apply.

In *Gillespie,* Appellant Ms. Gillespie was disciplined for failing to report child abuse in violation of 16 *Del. C.* Section 903 when she learned, in her personal capacity, that two young children had been sexually abused but did not report such abuse to their children or any authority. On appeal, the Court held that 16 *Del. C.* Section 903 does not apply to nurses outside of their professional role. As a result, Ms. Gillespie could not have violated 16 *Del. C.* Section 903. However, the basis for the Board's finding of Ms. Gillespie's unprofessional conduct was based solely upon the allegation that she violated 16 Del. C. Section 903. Thus, the Court determined that the Board should not have disciplined Ms. Gillespie and concluded that, without

---

[8] *Gillespie v. Delaware Bd. of Nursing*, 2011 WL 6034789 (Del. Super. Ct. Nov. 17, 2011).
[9] *Id.* at *2.

16 Del. C. Section 903, "the record lacks substantial evidence to support the Board's finding of unprofessional conduct."[10]

Here, it appears that the Board determined that Mr. Cooper engaged in unprofessional conduct for the reasons encapsulated in the Recommendation of the Hearing Officer: (1) failure to adhere to the routine practice of turning an obese patient on November 15, 2017, (2) failure to direct the CNA as to how each of them should position themselves, (3) failed to perform the customary 1-2-3 count to ensure they moved in synchronicity to safely turn the patient, and (4) failed to ensure the patient was fully awake and ready for the turn.[11] The basis for unprofessional conduct was not based solely upon the allegation that Mr. Cooper violated 10.4.2.5 or 10.4.2.14.

Next, Mr. Cooper suggests that there is no substantial evidence to support the Board's finding that he violated Board Regulation 10.4.1 because: (1) he established through rebuttal testimony of the CNA at the hearing with the Hearing Officer that the turning procedure was followed with the proper counting procedure and (2) that the Board found it was impossible for Mr. Cooper to injure Patient CN while attempting to turn the patient and causing Patient CN to strike a foley catheter.

---

[10] *Id.*

[11] Appellee's Answ. Br., Ex. A at p. 21 (Recommendation of the Hearing Officer).

The record does not show that the CNA stated that the turning procedure was followed with the proper counting procedure. In fact, reflected within the Finding of Facts in the Recommendation of the Hearing Officer, the CNA testified that Mr. Cooper "did not direct her where to stand, how they would turn [Patient CN], nor did he conduct the 1-2-3 count as had been customary for him to do in the past."[12] Moreover, the Board's finding that Mr. Cooper could not injure Patient CN while attempting to turn the patient and causing Patient CN to strike a foley catheter is relevant to the Board's determination that Mr. Cooper did not violate the other two Board Regulations. It has no relevance as to whether Mr. Cooper violated Board Regulation 10.4.1.

Last, there is substantial evidence that supports the Board's conclusion that Mr. Cooper violated Board Regulation 10.4.1. It is reasonable for the Board to find that Mr. Cooper committed unprofessional conduct, thereby violating Board Regulation 10.4.1, for failure to conform to legal and accepted standards in connection with Mr. Cooper's failure to competently and safely turn a patient based on the following findings of the Hearing Officer: (1) Patient CN stated that he was groggy at the time Mr. Cooper entered his room to apply Z-cream; (2) Patient CN stated that Mr. Cooper roughly roused him and began turning him without any advanced notice or warning; (3) Patient CN stated that he cried out in pain and

---

[12] *Id.* at p. 18.

questioned Mr. Cooper as to why Mr. Cooper was being so rough and whether he had done something to upset Mr. Cooper; (4) Patient CN stated that Mr. Cooper, instead of responding to his questions, simply walked out of the room; (5) Patient CN quickly reported Mr. Cooper's conduct to Cadia management; (6) Patient CN's statements were corroborated by the CNA who was present at the time of the incident; and (7) the Hearing Officer deemed the CNA to be more credible than Mr. Cooper regarding the incident.

In sum, substantial evidence exists to support the Board's finding that Mr. Cooper violated Board Regulation 10.4.1.

## B. Mr. Cooper's Right to Due Process

Mr. Cooper argues that he was denied due process when: (1) false and conflicting testimony factored into the Hearing Officer's Recommendation to the Board and (2) when the Hearing Officer accepted hearsay testimony at the hearing.

Mr. Cooper contends that the CNA falsely testified that a 1-2-3 count did not occur. It does not appear that the CNA falsely testified. In the written statement provided to Cadia on the day of the incident, the CNA stated that she provided the 1-2-3 count. At the hearing, the CNA stated that she gave the count when it is customary for the nurse to do so.[13] The record does not show evidence that the CNA lied about whether a 1-2-3 count occurred. Moreover, the record shows that the

---

[13] Appellee's Answ. Br., Ex. E at p. 105 (Hearing Transcript Excerpts).

Hearing Officer believed the CNA's statements to be credible and this Court cannot overturn the credibility determinations the Hearing Officer made.[14]

Mr. Cooper contends that the Hearing Officer improperly accepted hearsay testimony and doing so deprived him of his due process rights. Hearsay evidence is permissible in administrative hearings so long as that evidence is not the sole reason for the administrative hearing officer's decision.[15]

After a review of the record, it appears that very little hearsay evidence was admitted during the hearing. Most relevant here, the State presented Patient CN's statement to the DLTCRP. The Hearing Officer noted, although Patient CN's "statement to the DLTCRP is hearsay, it was consistent with what [the CNA] has repeatedly testified to about the incident, and I find her more credible on the point, as there was simply no motivation for her to lie."[16] It appears that the Hearing Officer found that Patient CN's statement to the DLTCRP further supported his finding of CNA's credibility, in light of the conflict in testimony between CNA and Mr. Cooper, and for his determination that Mr. Cooper violated various Board Regulations. The CNA testified at the hearing and the Hearing Officer "believed her

---

[14] *Sokoloff v. Board of Medical Practice*, 2010 WL 5550692, at *5 (Del. Super. Ct. Aug. 25, 2010) (citing to *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del.1965)).
[15] *Husbands v. Del. Dept. of Education and Del. Professional Standards Board*, 2020 WL 1814045, at *5 (Del. Apr. 7, 2020) (citing to *Larkin v. Gettier & Assoc.*, 1997 WL 717792, at *3 (Del. Super. Ct. Nov. 14, 1997)).
[16] Appellee's Answ. Br., Ex. A at p. 19.

testimony that she felt obligated to tell the truth."[17] As such, the Hearing Officer did not solely rely on Patient CN's statement for his decision.

## C. Abuse of Discretion

First, Mr. Cooper argues, using *Delaware Board of Nursing v. Francis*,[18] that the Board abused its discretion when it found that he violated Board Regulation 10.4.1 but not in violation of the twenty-nine illustrations of conduct that violates Board Regulation 10.4.1. However, as *Del. Bd. of Nursing v. Francis* makes clear, these illustrations are not an exhaustive list of conduct that violates Board Regulation 10.4.1.[19] The Board is not required to find that Mr. Cooper violated one of the twenty-nine illustrations of unprofessional conduct to find that he violated Board Regulation 10.4.1.

Second, Mr. Cooper argues that the Board abused its discretion when it relied "on the notion that that Mr. Cooper being placed on the Adult Abuse Registry constituted unprofessional conduct… ."[20] Mr. Cooper comes to this conclusion through the following language from the Hearing Officer's Recommendation to the Board: "his actions bring ill (sic) on the nursing profession and his name was placed

---

[17] *Id.*

[18] *Del. Bd. Of Nursing v. Francis*, 195 A.3d 467 (Del. Oct. 2, 2018).

[19] *Id.* at p. 469 ("The second part of the rule—Rule 10.4.2—contains a list of twenty-nine, **non-exhaustive** illustrations of conduct that violates that general proscription") (emphasis added).

[20] Appellant's Op. Br. at p. 32.

on the AAR as a result of the abuse he inflicted until January 16, 2021."[21] It does not appear that the Board concluded that Mr. Cooper constituted unprofessional conduct via placement on the Adult Abuse Registry.

The Board stated that Mr. Cooper was placed on the Adult Abuse Registry by DLTCRP due to the Hearing Officer's finding that Patient CN developed a hematoma on his leg as a result of Patient CN's Foley catheter pressing against his leg when Mr. Cooper turned him over. The Board did not conclude that Mr. Cooper committed unprofessional conduct by causing Patient CN to develop a hematoma. In fact, the Board determined that Mr. Cooper could not have caused Patient CN to develop a hematoma by making physical contact with a foley catheter during the turn in question.

Third, Mr. Cooper contends that a Brady violation occurred when the State did not provide to him the "Riddell report" through discovery. The Ridell report is a report drafted by the Division of Professional Regulation's ("DPR") investigator, Kathleen Ridell ("Ms. Ridell"). Ms. Ridell investigates complaints filed against professional licenses. Ms. Riddell never met with Mr. Cooper and has never spoken with him. Ms. Riddell interviewed the CNA and investigated Mr. Cooper's criminal, licensing, and adult abuse registry histories.

---

[21] Appellee's Answ. Br., Ex. A at p. 22.

The State contends that: (1) Mr. Cooper never requested discovery; (2) Mr. Cooper is conflating this administrative matter with a criminal prosecution; (3) Mr. Cooper had the opportunity to cross-examine Ms. Ridell about anything set forth in the report; (4) that the State withdrew the report from the proceedings because it included confidential information that was unnecessary to the hearing; and (5) that when the hearing officer asked Mr. Cooper if he objected to the Ridell report's withdrawal, Mr. Cooper only asked that the date and time Ms. Ridell interviewed the CNA be read into the record.

Mr. Cooper's argument fails for many reasons. In *Brady v. Maryland*,[22] the United States Supreme Court stated that the purpose of requiring production of evidence favorable to an accused **upon request** is to avoid an unfair trial to the accused.[23] It appears that Mr. Cooper did not request the materials. But even if he had, a claim of *Brady* violation does not apply here because this matter is not criminal in nature.[24] Lending further credence, in *Dawson v. State*, the Delaware Supreme Court stated that the starting point for reviewing a claim of a *Brady*

---

[22] *Brady v. Maryland*, 373 U.S. 83 (1963).
[23] *Id.* at p. 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment…").
[24] *Id.* at p. 87 ("Society wins not only when the guilty are convicted but when **criminal trials** are fair.") (emphasis added).

violation involves a three-part test to determine whether particular evidence should have been released to the accused **in a criminal case.**[25] As such, this claim fails.

Fourth, Mr. Cooper argues that the Board did not understand its discretion to determine that he did not commit a violation of the Board Regulations. Mr. Cooper's claim here is without merit. The Board understood its discretion to determine that he did not commit a violation of the Board Regulations by rejecting the Hearing Officer's recommendation that Mr. Cooper violated two Board Regulations.

Last, Mr. Cooper contends that the Board abused its discretion when the Board's Order did not provide conclusions of law other than the rejection of two of the Hearing Officer's determinations that Mr. Cooper violated two Board Regulations and that the Board was obligated to do so under 29 *Del. C.* Section 10161(e)(1)-(2). Mr. Cooper is mistaken here. There are two statutes that the Board may utilize to hold disciplinary matters: 29 *Del. C.* Section 8735(v) or 29 *Del. C.* Section 10161(e).

Under 29 *Del. C.* Section 10161(e), the Board may nominate three Board members to serve on a hearing panel or committee to resolve cases and decide disciplinary complaints. Under 29 *Del. C.* Section 8735(v), Division of Professional Regulation hearing officers may conduct certain disciplinary hearings, like the one in this matter, instead. Under 29 *Del. C.* Section 8735(v)(1)(d), the Board "shall

---

[25] *Dawson v. State*, 673 A.2d 1186, 1193 (Del. Apr. 17, 1996) (emphasis added).

make its final decision to affirm or modify the hearing officer's recommended conclusions of law and proposed sanctions based upon the written record."

Here, the Board modified the Hearing Officer's recommended conclusions of law and proposed sanctions by rejecting two of the conclusions and reducing the Hearing Officer's proposed sanction for violating Board Regulation 10.4.1 to continuing education requirements and a letter of reprimand. Although the Board does not explicitly affirm the Hearing Officer's third conclusion of law, that Mr. Cooper violated Board Regulation 10.4.1, the Board implicitly did so when it modified and reduced the proposed sanction for that violation to completing additional continuing education hours and a letter of reprimand for his conduct in failing to competently and safely turn a patient on November 15, 2017. This specific conduct was the charged conduct that underlies the Hearing Officer's conclusion that Mr. Cooper violated Board Regulation 10.4.1.[26]

---

[26] State's Answ. Br., Ex. A at p. 21. ("In this case, Mr. Cooper's failure to adhere to the routine practice of turning an obese patient on November 15, 2017, resulting in the patient's injury was a violation of Bd. Rule 10.4.1. Respondent failed to direct the CNA as to how each of them should position themselves and failed to perform the customary 1-2-3 count to ensure that they moved in synchronicity to safely turn the patient. He failed to ensure the patient was fully awake and ready for the turn and his failures resulted in injury to the patient. His behavior did not comply with nursing standards and did in fact adversely affect his patient in violation of Bd. Rule 10.4.1.").

## V.    CONCLUSION

Therefore, for the reasons stated above, the Board of Nursing's December 19, 2019 Order is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
**The Honorable Calvin L. Scott, Jr.**